UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-mj-8071-WM

**UNITED STATES of AMERICA**

**V.**

**DONOVAN GRANT,**

      **Defendant.**
_____/

FILED BY ____SW____ D.C.
Feb 10, 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)? NO

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? NO

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? NO

4. Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? NO

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By: _____
Brian D. Ralston
Assistant United States Attorney
Court ID No.: A5502727
500 S. Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Telephone: (561) 820-8711
Email: Brian.Ralston@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>DONOVAN GRANT<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  25-mj-8071-WM<br>)<br>)<br>) |

FILED BY ___SW___ D.C.
Feb 10, 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   May 2022 - November 2023   in the county of   Palm Beach and elsewhere   in the
  Southern   District of   Florida  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(viii) | Conspiracy to Possess with Intent to Distribute a Controlled Substance (methamphetamine) |

This criminal complaint is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Jesse Ricks, DEA
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by   Telephone (Facetime)  

Date: February 10, 2025

_____
*Judge's signature*

City and state:   West Palm Beach, Florida     Hon. William Matthewman United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Jesse Ricks, being first duly sworn, hereby depose and state as follows:

### AGENT BACKGROUND AND PURPOSE OF AFFIDAVIT

1.     I am a Special Agent with the Drug Enforcement Administration (DEA) assigned to the West Palm Beach District Office within the DEA's Miami Field Division. As such, I am a "law enforcement Officer" of the United States within the meaning of Title 18, United States Code § 2510(7) and am empowered to conduct criminal investigations and to make arrest for offenses enumerated in Title 18, United States Code § 2516(1).

2.     I have been a Special Agent with the Drug Enforcement Administration (DEA) since February 2012. I received basic training in narcotics investigations at the Justice Training Center located in Quantico, Virginia. I am currently assigned to the Miami Field Division, West Palm Beach District Office, in West Palm Beach, Florida. I have received specialized training in the means and methods used by narcotics traffickers to import and distribute narcotics, drug smuggling methods, and the concealment and laundering of proceeds from illicit drug trafficking activities. I have personally conducted and participated in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds. During the course of these investigations, I have participated in search warrant executions, debriefed or participated in debriefings of defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations. The aforementioned investigations resulted in the arrest and prosecution of numerous individuals for narcotics violations. Based upon my training and experience, I am familiar with the manner in which narcotics-trafficking organizations operate, including the manner in which various types of illegal drugs are cultivated, manufactured,

smuggled, distributed, or diverted, as well as methods used to finance drug transactions and launder drug proceeds. Additionally, I have received training in the use of wiretaps, telephone toll analysis, and wire intercept equipment, and have previously authored affidavits pertaining to the interception of wire and electronic communications. I have also participated in both the monitoring of wire and electronic interceptions and surveillance operations conducted in conjunction to the interception of wire and electronic interceptions and assisted by the use of electronic GPS monitoring and/or tracking devices. I have also participated in the search of numerous mobile phones which were used by drug traffickers to coordinate their distribution wherein I reviewed messages exchanged between the drug traffickers. In addition, I have participated in the search of numerous accounts that contained communication between drug traffickers, such as content produced in response to search warrants served on telecommunications companies which stored text message content of their customers and in response to search warrants served on data storage companies that store similar content (such as Apple's iCloud and Google's Drive). As a result of these searches and debriefing and interviews of the persons whose communications I reviewed, I have become familiar with the way that drug traffickers communicate about their drug trafficking and the way in which they often use simple coded language to communicate with each other.

  3. This affidavit is made in support of a criminal complaint charging defendant Donovan GRANT (hereinafter "GRANT") with conspiracy to possess with the intent to distribute a controlled substance (methamphetamine) in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii). The information contained in this affidavit is based in part on information developed by DEA Special Agents, Task Force Officers and information obtained from other law enforcement personnel. Because this affidavit is being submitted for the limited purpose of

establishing probable cause in support of the criminal complaint, it does not include all facts known to me or to other law enforcement officers regarding this investigation.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

Introduction and Background

4. In April 2022, the DEA joined a West Palm Beach Police Department ("PD") investigation into a crystal methamphetamine dealer operating in West Palm Beach, Florida. During the investigation, agents and detectives identified a crystal methamphetamine distributor ("cooperating defendant")[1] in Broward County, Florida, who was a source of supply of crystal methamphetamine for the dealer in West Palm Beach.

5. In August 2022, a Broward County Sheriff's Office undercover officer (hereinafter referred to as the "UC") began communicating directly with the cooperating defendant. Following those communications, the UC made seven controlled purchases of crystal methamphetamine from the cooperating defendant between August 2022 and January 2023. All of the controlled purchases took place in the Southern District of Florida, including one controlled purchase in Palm Beach County, Florida. A DEA laboratory confirmed all the substances purchased during those controlled purchases contained Methamphetamine Hydrochloride with a total net weight of approximately 5.1 kilograms. The details of several of those controlled purchases will be discussed later in this affidavit.

6. In the fall of 2023, DEA arrested the cooperating defendant pursuant to a federal arrest warrant issued in the Southern District of Florida for charges related to conspiracy to

---

[1] The CD shall be referred to herein in the masculine gender even though this may not be reflective of the CD's true gender.

possess with intent to distribute crystal methamphetamine and distribution of crystal methamphetamine. In February 2024, the cooperating defendant began providing information to law enforcement in hopes of receiving credit from the Court, either in the form of receiving a lesser sentence or a later sentence reduction. Law enforcement made no promises to the cooperating defendant with regards to any lesser sentence, sentence reduction or other outcome because of his cooperation. DEA has corroborated a significant amount of the information provided by the cooperating defendant and believes the information provided by cooperating defendant to be reliable.

7. The cooperating defendant ("CD") told law enforcement that, beginning sometime after February 2022, he began obtaining crystal methamphetamine from a supplier located in California through an intermediary person located in Broward County, Florida (hereinafter referred to as the "Intermediary"). The CD provided a name, telephone number and physical description for the supplier and subsequently identified a prior booking photograph of Donovan GRANT as the supplier. The CD provided a physical description and telephone number of the Intermediary and identified a Florida driver's license photograph of the Intermediary. The CD stated that GRANT supplied the CD with crystal methamphetamine until approximately April 2023. The CD stated that during that time frame (in or around February 2022 through in or around April 2023), GRANT was the CD's primary crystal methamphetamine source of supply. The CD stated that at the start of his relationship with GRANT, the CD would request crystal methamphetamine from GRANT and the Intermediary would provide the crystal methamphetamine to the CD. Later in the relationship with the GRANT, the CD received shipped parcels containing crystal methamphetamine directly from GRANT and not through the Intermediary.

## The Cooperating Defendant's Phone Content

8.      During the arrest of the CD, law enforcement seized the CD's mobile phone. I have reviewed the contents of the CD's phone and found a contact and telephone number for the Intermediary as well as a contact and telephone number for GRANT. I reviewed call detail records for several numbers that the CD used during the time of the investigation into the CD and found that at least four different telephone numbers used by the CD have been in contact with the Intermediary's telephone number. I also found that several telephone numbers used by the CD were in contact with GRANT's number. Subpoenaed records for GRANT's telephone number provided by T-Mobile list the subscriber as "Donovan Grant." The billing details of the subscriber records list a date of birth that is the same assigned to GRANT in a law enforcement database. In addition, in the Florida Driver and Motor Vehicle Information Database, I found a vehicle that is registered to GRANT and one of his telephone contacts from Florida. In the scanned motor vehicle title documents associated with the vehicle in the Florida DAVID, there is a scanned copy of a California driver's license which depicts GRANT and shows the same date of birth as the subscriber records.

9.      In addition to the contact listing in the CD's phone, the phone also contains messages exchanged between the CD and the Intermediary, and between the CD and GRANT, both as regular text messages and as WhatsApp messages. I personally reviewed these communications between the CD and the Intermediary, and between the CS and GRANT along with other communications found in the phone. Based on my training and experience and my interpretation of those communications, the messages reflect the following:

   a. The Intermediary was involved in a conspiracy to distribute crystal methamphetamine with the CD and GRANT.

5

  b. The Intermediary introduced the CD to the GRANT in May 2022 and after the initial introduction the three worked together to distribute crystal methamphetamine.

  c. Early in conspiracy, GRANT provided the Intermediary with the crystal methamphetamine and then the Intermediary provided the crystal methamphetamine to the CD.

  d. Later in the conspiracy with GRANT, the CD received the crystal methamphetamine parcels directly from GRANT, and the Intermediary was no longer involved. The CD paid for the crystal methamphetamine through a variety of methods. Those methods included depositing cash into bank accounts provided by GRANT, sending Zelle payments to accounts associated with phone numbers that GRANT provided, and providing cash to GRANT's associates who were in the south Florida area.

 10. After my review of the messages, another investigator and I reviewed the communications in the phone with the CD. The CD's explanation of the messages generally matched my understanding of the messages. As such, the messages corroborate the information that the CD initially provided law enforcement. Specific details of some of those messages and their relation to the conspiracy are as follows:

 11. On May 11, 2022, the CD and the Intermediary had the following exchange.

| CD | Hey it's [CD] don't forget about my Cali trip | 5/11/22 |
|---|---|---|
| CD | How are u | 5/11/22 |
| Intermediary | Morning… it's ok for him to call you… he goes bad dog leash. He told yesterday that he will tell you the cost of the vehicles and go from there. He called me last night as well. Give me to the green light to get your vehicles ready for the business's he's 3 hours different in time it's after 7am now | 5/11/22 |

12.     My interpretation of the above exchange is as follows: The CD reminded the Intermediary ("Hey it's [CD] don't forget") to reach out to GRANT ("about my Cali trip"). The Intermediary told the CD that GRANT goes by "bad dog leash." The Intermediary added that he spoke with GRANT "last night" and that GRANT is in a time zone that is three hours different than the Intermediary and the CD ("he's 3 hours different in time"). It should be noted that the time difference between California and Florida is three hours. Based on my review of the messages in the CD's phone and the CD's statements, these messages started the introduction of the CD to GRANT. After this introduction, GRANT began to supply crystal methamphetamine to the CD through the Intermediary.

August 11, 2022 – Controlled Purchase

13.     In early August 2022, a confidential source working with the Broward Sheriff's Office provided information and subsequently introduced an undercover officer ("UC") to the CD for the purpose of the UC buying crystal methamphetamine from the CD.

14.     Messages contained in the CD's seized phone show the following communications. On August 8, 2022, the Intermediary sent a message to the CD that read, "Hey corn ready." Following that message, they exchanged additional messages that coordinated a place and time to meet. One of the last messages from the CD to the Intermediary read, "Np 20'mins." My interpretation of that exchange is that the Intermediary received crystal methamphetamine ("corn") from GRANT and was ready to provide the drugs to the CD ("ready"). The CD and Intermediary coordinated a meeting location and would meet in twenty minutes ("20'mins").

15. On August 11, 2022, around noon, the UC met the CD in the Fort Lauderdale, Florida area. The CD provided the UC approximately eleven ounces of crystal methamphetamine in exchange for $3,000 United States currency ("USC") of DEA Official Advanced Funds ("OAF"). A DEA laboratory has since confirmed the substance purchased to contain Methamphetamine Hydrochloride. Based on the facts listed herein, I believe that the crystal methamphetamine sold to the UC was supplied by GRANT and provided to the CD by the Intermediary on August 8, 2022.

16. Two days later, on August 13, 2022, the CD sent a message to GRANT that read, "I have 6cent sry been busy all day today so sry." My interpretation of this message is that the CD had $6,000 USC ("6cent") of crystal methamphetamine proceeds to pay to GRANT but that the CD had been too busy to send the payment to GRANT that day. Later that same day the CD added, "I'm dry already." I know from my training and experience and from speaking with the CD that "dry" is a common coded reference that means "out of drugs." GRANT responded with a message that contained a bank name, account name, and account number (hereinafter referred to as "ACCOUNT-1"). I interpreted this message as GRANT directing the CD to deposit the $6,000 USC of drug proceeds into ACCOUNT-1. GRANT and the CD exchanged additional messages about when the deposit would occur and on August 14, 2022, the CD wrote, "It's done" which I understand to mean the deposit was made.

17. I have reviewed bank records of ACCOUNT-1. The records reflect a deposit of $6,000 cash cleared the account the following day (August 15, 2022). The records further show three cash withdrawals of $1,003 from ACCOUNT-1 in Los Angeles, California following the deposit (two on August 15, 2022, one on August 16, 2022). It should be noted that ACCOUNT-1 is an account for a business with a listed address in Florida that is not associated with GRANT.

Based on my training and experience, I recognized this sequence of transactions to exhibit at least two common money laundering techniques used by drug traffickers. The first is when funds are deposited into an account with no association to the drug trafficker (often called a "pass through account") in order to layer the transactions and avoid discovery of the true recipient of the deposited funds. The second technique is when funds are deposited in one geographic location and withdrawn in another location shortly after to rapidly facilitate the movement of funds over long distances. Based on my training and experience and the facts listed herein, I believe this $6,000 USC deposit into ACCOUNT-1 was payment to GRANT for the crystal methamphetamine received by the CD from the Intermediary on August 8, 2024.

August 31, 2022 – Undercover Controlled Purchase

18. On August 26, 2022, the CD exchanged the following messages with the Intermediary and GRANT.

| To GRANT | Gm going to get that 75 sent to u where at | | 8/26/22 3:00 PM |
|---|---|---|---|
| From GRANT | Ok | | 8/26/22 3:00 PM |
| From the Intermediary | Ok | | 8/26/22 3:11 PM |
| From GRANT | Missed Voice Call | | 8/26/22 7:40 PM |
| From the Intermediary | Hit me up | | 8/26/22 7:57 PM |
| To the Intermediary | Dam. Just waking up so sorry | | 8/26/22 9:07 PM |
| To GRANT | Hey I was sleeping I misse everyone call | | 8/26/22 9:13 PM |
| To the Intermediary | I'm ready wherever to come just got [*******][2] | | 8/26/22 9:42 PM |
| From the Intermediary | You got Cali clear | | 8/26/22 9:49 PM |
| To the Intermediary | Yes he said everything good | | 8/26/22 9:54 PM |
| To the Intermediary | I'm zell | | 8/26/22 9:54 PM |
| To the Intermediary | Hey | | 8/26/22 10:49 PM |
| From GRANT | Do 25 in this | [Photograph of a name and telephone number] ("Contact-1") | 8/26/22 11:04 PM |
| From GRANT | [Photograph of a name and telephone number] ("Contact-1") | | 8/26/22 11:04 PM |
| To GRANT | Ok | | 8/26/22 11:04 PM |

---

[2] This name was redacted because the person is a minor.

9

| To GRANT | Doing it now | 8/26/22 11:04 PM |
|---|---|---|
| To GRANT | Is it a navy | 8/26/22 11:04 PM |
| From GRANT | I think so | 8/26/22 11:05 PM |
| From GRANT | [Attachment of Contact Information of a name and telephone number] ("Contact-2") | 8/26/22 11:08 PM |
| From GRANT | [Attachment of Contact Information of a name and telephone number] ("Contact-3") | 8/26/22 11:09 PM |
| To GRANT | Call me I'm confused | 8/26/22 11:10 PM |
| To GRANT | [Telephone number] ("Contact 4") | 8/26/22 11:12 PM |
| To the Intermediary | I'm on phone with him now he said u have the go | 8/26/22 11:14 PM |
| From the Intermediary | He will call me or text me | 8/26/22 11:15 PM |
| To the Intermediary | Ya ok | 8/26/22 11:15 PM |
| To GRANT | [Contact-3 Name] I need her email for navy | 8/27/22 12:07 AM |
| From GRANT | [Email address for Contact-3] | 8/27/22 12:11 AM |
| To GRANT | Thanks | 8/27/22 12:24 AM |
| To the Intermediary | 20 mins away | 8/27/22 1:16 AM |
| From GRANT | Missed Voice Call | 8/27/22 1:32 AM |
| To GRANT | Hold on one sec | 8/27/22 1:34 AM |
| To GRANT | Im at wal green now depositing to send 5 | 8/27/22 1:35 AM |
| To GRANT | Call u in 5 mins | 8/27/22 1:35 AM |
| To GRANT | She got it | 8/27/22 1:46 AM |
| From GRANT | Which one | 8/27/22 1:47 AM |
| To GRANT | Navy | 8/27/22 1:47 AM |
| To GRANT | The email u sent | 8/27/22 1:47 AM |
| To GRANT | [Contact-3 Name] | 8/27/22 1:48 AM |
| To GRANT | Something like that | 8/27/22 1:48 AM |
| From the Intermediary | What's your eta ? | 8/27/22 2:06 AM |
| To the Intermediary | How long | 8/27/22 2:12 AM |
| To the Intermediary | I'm here | 8/27/22 2:12 AM |
| To GRANT | Everything good | 8/27/22 2:32 AM |

19. My interpretation of the above exchange is as follows: The CD had $7,500 USC in drug proceeds for GRANT and wanted to know how to pay ("Gm going to get that 75 sent to u where at"). GRANT acknowledged the message ("Ok") and the CD took the acknowledgement as permission to receive additional crystal methamphetamine from the Intermediary. The CD then told the Intermediary that he was ready to meet the Intermediary anywhere to obtain the resupply of crystal methamphetamine ("I'm ready wherever to come just got [*******]"). The

10

Intermediary would not provide the crystal methamphetamine until the CD paid GRANT ("You got Cali clear") and GRANT notified the Intermediary directly ("He will call me or text me"). GRANT provided several ways to pay ("Put 25 in this" with the attached photograph of a name of telephone number for Contact-1, and then photographs of names and phone numbers for two persons) and it confused the CD ("Call me I'm confused"). Ultimately, the CD and GRANT clarified the confusion and the CD sent a payment to a Navy Federal Credit Union account of Contact-3 ("[Contact-3 Name] I need her email for navy," "Im at wal green now depositing to send 5," "She got it," "Navy", "The email u sent," "[Contact-3 Name]"). After the payment was made, the Intermediary provided the CD with the crystal methamphetamine when they met ("How long" and "I'm here") and the CD notified GRANT that he received the drugs ("Everything good").

20.  I have reviewed bank records of a Navy Federal Credit Union account in the name of Contact-3. The records list transfers of $2,450 and $2,500 into the account of Contact-3 from the CD on August 29, 2022. Those same records show that Contact-3 sent to the following payments that appear to be to GRANT:

   a. Zelle payments of $1,000 and $1,400 on August 29, 2022 (listed as "Zelledonovan Gra"),

   b. CashApp payment of $2,000 on August 31, 2022 (listed as "Cash App"Donovan G"), and

   c. Zelle payment of $100 on August 31, 2022 (listed as "Zelledonovan Gra").

21.  Based on my training and experience and the facts listed herein, I believe these transfers into the account of Contact-3 were payments for crystal methamphetamine that GRANT provided to the CD through the Intermediary. I know from my training and experience that the

owner of pass through accounts often receives a commission for the use of their account. I further now that sometimes accounts other than that which received the initial deposit are used to pay the ultimate recipient of the funds. Therefore, it is not unusual that the payments from Contact-3 to GRANT from this account do not add up to the same amount deposited into Contact-3's account by the CD.

22. On August 31, 2022, after the UC had telephone negotiations with the CD, a third party provided the UC approximately twenty-three ounces (almost one and a half pounds) of crystal methamphetamine on behalf of the CD in exchange for $5,000 USC of DEA OAF. A DEA laboratory has since confirmed the substance purchased to contain Methamphetamine Hydrochloride. Based on my training and experience and the facts listed herein, I believe that the crystal methamphetamine purchased by the UC on this date was supplied to the CD by GRANT through the Intermediary on August 27, 2022.

23. Later in the day, GRANT asked the CD, "You did that," and the CD responded, "No I didn't I was first thing in am I missed the bank but I have 16." GRANT then acknowledged, "Ok." My interpretation of these messages is that GRANT asked if the CD had sent a payment for crystal methamphetamine ("You did that"). The CD had not ("No I didn't") yet and had $16,000 USC to send ("I have 16").

24. The following day (September 1, 2022), in response to a missed voice call, the CD asked GRANT, "Hey u called." GRANT responded, "Yea just go do the 8 for me and then give home the rest" and then GRANT liked a message that he sent previously which contained an account number, a business name, and a bank name (hereinafter referred to as "ACCOUNT-2"). I interpreted these messages as GRANT directing the CD to put $8,000 USC into ACCOUNT-2 and to give the remaining drug proceeds to a third party, possibly the Intermediary ("home"). The

CD agreed by saying "Okay np." GRANT then added, "Do 84 thanks" which I understand to mean $8,400 USC (instead of $8,000 USC).

25.  I have not obtained the records for ACCOUNT-2. However, I have obtained records for an account belonging to GRANT with JP Morgan Chase Bank which show GRANT received a $3,000 USC Zelle payment from an entity with a name matching that of ACCOUNT-2. Based on my training and experience and the facts listed herein, I believe that the transfer was to GRANT and was part of the $8,400 USC payment mentioned by the CD. I further believe that the money being given to GRANT and to the third party (possibly the Intermediary) included the DEA OAF the UC paid for the crystal methamphetamine on August 31, 2022.

26.  The above listed communications fall at a time that relates directly to undercover controlled purchases of a substance confirmed by a DEA laboratory to be Methamphetamine Hydrochloride. My review of the messages in the CD's phone show that the crystal methamphetamine supplied by GRANT through the Intermediary on these occasions is the crystal methamphetamine purchased from the CD by the UC. In addition to the facts listed above, I believe that the messages contained in the CD's phone show that the Intermediary met with the CD on numerous other occasions to supply the CD with crystal methamphetamine and that the CD sent numerous payments to GRANT to pay for the crystal methamphetamine. Based on my review of the messages contained in the CD's mobile phone, the Intermediary assisted the CD and GRANT in the distribution of crystal methamphetamine through at least December 17, 2022. However, the CD and GRANT continued the conspiracy through the early morning hours on the date of the CD's arrest in the fall of 2023. On that day, the CD sent messages to GRANT asking for the balance of drug proceeds still owed to GRANT for their past transactions. Between August 2022 and December 2022, the UC purchased over four kilograms of crystal methamphetamine

from the CD. Based on the information provided by the CD and my review of the CD's phone, I believe that most, if not all, of the drugs were supplied to the CD by GRANT and the Intermediary.

27. The WhatsApp communications between the CD and GRANT also contained audio clips sent from GRANT to the CD. During an interview of the CD, I played some of these audio clips which were sent from GRANT's WhatsApp account number/telephone number to the CD. The CD confirmed that the voice in the audio clips belongs to the same person whom the CD met on at least two occasions in person and to the person in the photograph which the CD identified as GRANT.

## CONCLUSION

28. Based on the foregoing, I submit that there is probable cause to believe that beginning on or around May 11, 2022 and continuing through the fall of 2023, GRANT did commit the criminal offense of conspiracy to possess with the intent to distribute a controlled substance (methamphetamine) in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii).

FURTHER AFFIANT SAYETH NAUGHT.

_____
JESSE RICKS, SPECIAL AGENT
DRUG ENFORCEMENT ADMINSTRATION

Sworn and Attested to before me by Applicant by Telephone (Facetime)
pursuant to Federal Rules of Criminal Procedure 4(d) and 4.1, this
<u>10th</u> day of February, 2025

_____
HON. WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

14

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: Donovan Grant

**Case No**: 25-mj-8071-WM

Count#: 1
Conspiracy to Posses with Intent to Distribute a Controlled Substance (methamphetamine)

21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(viii)

* **Max. Term of Imprisonment:** Life
* **Mandatory Min. Term of Imprisonment (if applicable):** 10 years
* **Max. Supervised Release:** 5 years
* **Max. Fine:** $10,000,000
* **Special Assessment:** $100

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.